UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 21-cr-0160 (WMW/LIB) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Antoine Marcell Fickas (1) and Lizabeth Ann Skarja (2), | |
| Defendants. | |

---

Before the Court is United States Magistrate Judge Leo I. Brisbois's February 11, 2022 Report and Recommendation (R&R). (Dkt. 67.) The R&R recommends granting Defendant Antoine Marcell Fickas's motion to suppress evidence obtained as a result of search and seizure, (Dkt. 48), and granting Defendant Lizabeth Ann Skarja's motion to suppress evidence obtained as a result of search and seizure, (Dkt. 52). Plaintiff United States of America filed timely objections to the R&R. Defendants filed a timely response. For the reasons addressed below, the Court overrules the United States's objections and adopts the R&R.

**BACKGROUND**

Defendants each were charged by indictment with one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The magistrate judge held a hearing on

Defendants' motions to suppress at which Hibbing Police Department Officer Joe Burns testified regarding the investigation of this case.

On April 20, 2021, at approximately 1:48 a.m., Officer Burns, accompanied by his canine partner, Chase, approached a roundabout where he observed a dark-colored GMC Acadia exiting the roundabout. Officer Burns observed the male driver, who had his arm on the steering wheel. After he passed the Acadia, Officer Burns read the license plate number of the Acadia, which he recognized as belonging to Kaycee Johnson. Officer Burns verified his identification of the license plate number on his computer. Officer Burns believed, and verified on his computer, that an active domestic abuse no-contact order prohibited Justin Lemmons from being in close proximity to Johnson. Officer Burns began following the Acadia.

While following the Acadia, Officer Burns observed the Acadia's brake lights momentarily flash as it proceeded through an intersection with a green light. Officer Burns also observed the car's left turn signal activate as the car continued for approximately 200 yards without turning. Officer Burns observed the car move to the right lane of the road. Officer Burns subsequently drove in the left lane and approached the Acadia. The driver of the Acadia was a man with a goatee, a neck tattoo, and tattoos on his arm. As he had interacted with Lemmons on prior occasions, Officer Burns knew Lemmons to have "goatee-style facial hair, neck tattoos, and full arm sleeves." Officer Burns suspected that Lemmons was the driver of the Acadia. A female passenger, whom Officer Burns was unable to identify, also was in the car. Officer Burns suspected, however, that Johnson was the passenger.

Officer Burns entered the right lane behind the Acadia.  The Acadia activated its right turn signal and turned right onto Howard Street East.  Officer Burns turned right and followed the Acadia.  Soon thereafter, Officer Burns activated his vehicle's emergency lights and observed the Acadia's occupants engage in "furtive movements," which Officer Burns described in his testimony as "moving around within the vehicle as they were looking back at me."  The driver of the Acadia slowed down and pointed his arm out the car window to indicate that he was pulling into the parking lot of the Southview Apartments.  After the Acadia parked in a parking spot at the Southview Apartments, Officer Burns stopped his vehicle behind the Acadia.

Officer Burns told the driver to show his hands through the open window of the Acadia.  The driver complied.  As other police officers arrived on the scene, Officer Burns approached the driver's window and "immediately recognized that" the driver was not Lemmons, as Officer Burns had suspected.  Officer Burns did not know the identity of the driver and, contrary to Officer Burns's suspicion, Officer Burns observed that the female passenger was not Johnson.  Officer Burns asked the driver to exit the Acadia.  The driver, later identified as Fickas, complied.  Fickas gave his name and date of birth to Officer Burns, who subsequently handcuffed Fickas and placed him in the back of Officer Burns's vehicle.  While Officer Burns was handcuffing Fickas, other officers instructed Skarja to exit the Acadia.  Those officers eventually opened the passenger door and struggled with Skarja.  With the passenger door ajar, the officers observed a glass smoking device in the pocket of the passenger door and relayed this information to Officer Burns.  Officer Burns concluded that the purpose of the glass device was to ingest methamphetamine.  He also

observed two handbags and an athletic bag in the front seat.  Their location caused Officer Burns to be suspicious because there was space elsewhere in the vehicle to store the bags.

Officer Burns then deployed his canine partner, Chase, to sniff the vehicle for drug detection.  Between the driver's door and rear-passenger door of the Acadia, Chase alerted the officers to the presence of the odor of narcotics and gave a final indication.  Without obtaining a warrant, the officers then searched the interior of the Acadia in its entirety except for several bags located in the trunk of the car.  The search resulted in the discovery of micro-baggies, approximately 3.6 pounds of suspected methamphetamine, approximately 13 grams of suspected heroin, scales (including a scale with white powder residue that tested positive for methamphetamine), "loaded" hypodermic syringes, and a silicone container containing a crystalline substance that later tested positive for methamphetamine.  The officers seized the Acadia and had it towed to the police garage.

After the parking-lot search of the Acadia, Hibbing Police Department Officer Steve Dolinich applied for a search warrant authorizing the officers to search the Acadia.  In support of the search warrant application, Officer Dolinich submitted an affidavit describing in detail what the officers discovered in their parking-lot search, and he provided a summary of statements that Skarja made to Officer Burns at the Hibbing Police Department.  Based on Officer Dolinich's application, a Minnesota District Court judge found probable cause and issued a search warrant as to the Acadia on April 20, 2021. During their search of the Acadia, officers recovered additional items, including cellphones and brass knuckles.

Fickas and Skarja move to suppress the evidence obtained during the search of the Acadia, arguing that the traffic stop, dog sniff and subsequent searches of the vehicle violated the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures. The United States objects to the R&R, which recommends granting Defendants' motions to suppress evidence because, after his identification of the vehicle's occupants, Officer Burns lacked probable cause to extend the search.

## ANALYSIS

The Court reviews *de novo* those aspects of the R&R to which the United States filed timely objections. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); LR 72.2(b)(3); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and allows a law enforcement officer to obtain a warrant only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As the Fourth Amendment includes no enforcement provision, the Supreme Court of the United States has created an exclusionary rule that, when applicable, precludes the use at trial of improperly obtained evidence. *Herring v. United States*, 555 U.S. 135, 139 (2009) (citing *Weeks v. United States*, 232 U.S. 383, 398 (1914)). Evidence obtained during a search or seizure conducted in violation of the Fourth Amendment must be suppressed. *Segura v. United States*, 468 U.S. 796,

804 (1984). The Court addresses the constitutionality of Officer Burns's traffic stop and extension of the traffic stop, in turn.

## I.    The Traffic Stop of the Acadia

The parties dispute whether the investigatory stop of the Acadia conducted by Officer Burns violated the Fourth Amendment. A law enforcement officer may initiate an investigatory stop when the officer has a reasonable and articulable suspicion of criminal activity. *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005) (citing *Terry v. Ohio*, 392 U.S. 1, 25–31 (1968)). "A reasonable suspicion is a particularized and objective basis for suspecting criminal activity by the person who is stopped." *United States v. Hightower*, 716 F.3d 1117, 1119–20 (8th Cir. 2013) (internal quotation marks and brackets omitted). When evaluating whether the particular facts known to the officer provide "an objective and particularized basis for a reasonable suspicion of criminal activity," *United States v. Halls*, 40 F.3d 275, 276 (8th Cir. 1994) (internal quotation marks omitted), the court considers the totality of the circumstances to determine whether the officer conducting the investigative stop had "a particularized and objective basis for suspecting legal wrongdoing" based on the officer's "experience and specialized training to make inferences from and deductions about the cumulative information available," *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal citations and quotations omitted). The likelihood of criminal activity need not rise to the level of probable cause, but an officer "may not rely on inarticulate hunches to justify the stop." *United States v. Dillard*, 825 F.3d 472, 474 (8th Cir. 2016) (internal quotation marks omitted). To satisfy the legal standard for an investigative stop, "the government must point to specific, articulable facts

that reasonably suggest" criminal activity. *Bustos-Torres*, 396 F.3d at 942 (citing *Terry*, 392 U.S. at 27).

Officer Burns observed the Acadia that Johnson owned being driven by a man that Officer Burns suspected to be Lemmons. Officer Burns knew Lemmons and had confirmed that he was barred by court order from being in close proximity to Johnson. The suspected criminal activity on which Officer Burns relied when deciding to stop the Acadia was Lemmons's violation of the court order preventing him from having any contact with Johnson.[1] If Lemmons was driving Johnson in her Acadia, their proximity to each other was in violation of the court order. Because Officer Burns's initial observation of the occupants of the vehicle was sufficient to establish reasonable suspicion of criminal activity, the R&R correctly concludes that the investigative stop of the Acadia by Officer Burns was constitutionally permissible.

---

[1]     In its arguments before the magistrate judge, the United States suggested that the Acadia driver's unusual manner of driving and the furtive movements of the Acadia's occupants justified both Officer Burns's initial stop of the Acadia and the extension of that stop. The United States has abandoned this justification, which is warranted because, as the R&R succinctly explains, "Officer Burns' belief that Minnesota state law requires a driver to turn every time a vehicle's turn signal is activated is an unreasonable mistake of law, and it cannot support or contribute to the formation of reasonable, articulable suspicion." *See*, *United States v. McLemore*, 887 F.3d 861, 867 (8th Cir. 2018); *United States v. Sanders*, 196 F.3d 910, 913 n.3 (8th Cir. 1999). In addition, this Court is mindful that citizens may reasonably exhibit signs of nervousness when confronted by a law enforcement officer. *United States v. Beck*, 140 F.3d 1129, 1139 (8th Cir. 1998). For these reasons, neither Officer Burns's observation of the purportedly unusual driving nor the allegedly unusual movements within the Acadia support a finding that there was reasonable suspicion to justify a traffic stop.

## II.      Extension of the Stop

The parties dispute the constitutionality of extending the investigative stop after Officer Burns realized that the occupants of the Acadia were not the individuals he intended to stop.  The R&R concludes that the extension of the stop was unlawful.

An officer is permitted to conduct an investigation "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20; *see also United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990).  The scope of a Fourth Amendment intrusion "var[ies] to some extent with the particular facts and circumstances of each case." *Florida v. Royer,* 460 U.S. 491, 500 (1983); *see also United States v. Willis*, 967 F.2d 1220, 1224 (8th Cir. 1992).  "The scope of the detention must be carefully tailored to its underlying justification." *Royer*, 460 U.S. at 500.  To comport with the Fourth Amendment, the intrusion must be " 'no longer than is necessary to effectuate the purpose of the stop,' " using "the least intrusive means available to dispel the officer's suspicion in a timely fashion." *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001) (quoting *Royer*, 460 U.S. at 500).

Here, the traffic stop was supported by reasonable suspicion.  Officer Burns initiated the traffic stop because he believed that Lemmons was transporting Johnson in Johnson's car in violation of a domestic violence no-contact order.  At the hearing before the magistrate judge on the motions to suppress evidence, Officer Burns testified that when standing at the driver-side door of the Acadia, he "immediately recognized that" the driver of the Acadia was not Lemmons.  This knowledge dispelled any reasonable suspicion that

justified an extension of the investigative stop.  In short, the investigative stop should have ceased.

The United States contends that three other circumstances provide a lawful justification for the extension of the stop and search.  First, the officers observed three bags in the passenger seat of the car.  Second, the officers discovered suspected drug paraphernalia in the passenger-side door compartment when the officers opened the door next to Skarja and removed her from the Acadia.  Third, the driver of the Acadia did not pull over immediately after Officer Burns activated his vehicle's emergency lights.  Each justification advanced by the United States is addressed in turn.

The parties disagree as to whether the three bags located on the passenger side of the vehicle provided Officer Burns with reasonable suspicion of drug activity.  As addressed in the preceding analysis, an officer must have a "reasonable suspicion" that forms "a particularized and objective basis for suspecting criminal activity."  *Hightower*, 716 F.3d at 1119–20.  Officer Burns testified that, because there was room to stow the bags elsewhere in the car, the presence of the three bags in the passenger side of the Acadia suggested drug activity.  But there is nothing inherently suspicious about stowing bags in the passenger side of a car rather than elsewhere in the vehicle.  Without more, the mere presence of handbags and an athletic bag in the passenger side of a car does not establish reasonable suspicion that justifies the extension of an investigative stop.

The next justification advanced by the United States for extending the search after the Acadia driver and passenger were identified is the officers' discovery of suspected drug paraphernalia in the passenger door compartment when the officers forcibly removed

Skarja from the vehicle.  To comport with the Fourth Amendment, however, an intrusion " 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop' and . . . the officer should employ the least intrusive means available to dispel the officer's suspicion in a timely fashion." *Jones*, 269 F.3d at 924 (quoting *Royer*, 460 U.S. at 500).   A police stop that exceeds "the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015).[2]   Here, Officer Burns conducted the investigative stop of the Acadia because he suspected that Lemmons was driving the Acadia and that Johnson was the passenger seated next to Lemmons, in violation of a court order.  When Officer Burns realized his suspicion was erroneous, any reasonable suspicion was dispelled.  Having performed all that was necessary to effectuate the purpose of the stop, Officer Burns should have terminated the stop.  But Officer Burns did not do so.  The officers discovered the drug paraphernalia only *after* they extended the investigative stop unlawfully.  This discovery *after* the impermissible extension of the investigative stop fails to establish reasonable suspicion justifying the extension of the stop.

The last justification advanced by the United States for the extension of the stop by Officer Burns is that, rather than pulling over immediately when Officer Burns activated his emergency lights, Fickas drove to a neighboring apartment parking lot after slowing

---

[2]     Although "police officers may order out of a vehicle both the driver and any passengers and perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous," *United States v. Collier*, 419 F. App'x 682, 685 (8th Cir. 2011) (internal quotation marks and brackets omitted), neither the parties nor the R&R identify any statement or evidence in the record that Officer Burns suspected Fickas or Skarja was armed and dangerous.

down and alerting Officer Burns of his intent to do so. The record does not suggest, and the parties do not contend, that Fickas attempted to flee Officer Burns or otherwise evade the stop. Under the circumstances presented here, Fickas's failure to immediately stop does not establish reasonable suspicion that justifies an extension of an investigatory stop.

In summary, the purpose of the stop was completed when Officer Burns "immediately realized" that both the driver and the passenger of the Acadia were not the individuals Officer Burns suspected them to be, and the traffic stop should have concluded at that time. Not one of the justifications for extending the stop beyond the identification of the occupants of the Acadia constitutes reasonable suspicion for doing so. Because the R&R correctly concludes that the extension of the stop was unconstitutional, the Court overrules the United States's objections.

The Court grants Defendants' motions to suppress all evidence obtained *after* Officer Burns identified the driver and passenger of the vehicle as persons other than the targets of Officer Burns's investigation, Justin Lemmons and Kaycee Johnson, which ended the lawful purpose of the investigatory stop.

### ORDER

Based on the R&R, the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.  Plaintiff United States of America's objections to the February 11, 2022 R&R, (Dkt. 68), are **OVERRULED**.

2.  The February 11, 2022 R&R, (Dkt. 67), is **ADOPTED**.

3.      Defendant Antonie Marcelle Fickas's motion to suppress evidence obtained as a result of search and seizure, (Dkt. 48), is **GRANTED** as addressed herein.

4.      Defendant Lizabeth Ann Skarja's motion to suppress evidence obtained as a result of search and seizure, (Dkt. 52), is **GRANTED** as addressed herein.


Dated:  April 12, 2022                                          s/Wilhelmina M. Wright
                                                                Wilhelmina M. Wright
                                                                United States District Judge